1    ORRICK, HERRINGTON & SUTCLIFFE LLP
      Jonathan P. Guy (admitted *pro hac vice*)
2    Columbia Center
      1152 15th Street, N.W.
3    Washington, D.C. 20005-1706
      Tel:    (202) 339-8516
4    jguy@orrick.com

5    -and-

6    Jeffery D. Hermann (SBN 90445)
      777 South Figueroa Street, Suite 3200
7    Los Angeles, California 90017-5855
      Tel:    (213) 629-3619
8    jhermann@orrick.com

9    *Attorneys for Defendant David H. Koch*

10                   UNITED STATES BANKRUPTCY COURT
                      CENTRAL DISTRICT OF CALIFORNIA
11                        LOS ANGELES DIVISION

12

| | |
|---|---|
| 13   In re | Case No. 2:14-bk-21532-RK |
| 14   TIFKAH, fka THE HOUSE RESEARCH INSTITUTE | Adv. No. 2:16-ap-01266-RK |
| 15                   Debtor. | Chapter 7 |
| 16 | **NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT AGAINST DEFENDANT DAVID H. KOCH PURSUANT TO RULE 12(b)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| 17   JOHN J. MENCHACA, TRUSTEE FOR THE CHAPTER 7 ESTATE OF TIFKAH, | |
| 18 | |
| 19                   Plaintiff, | |
| 20         vs. | |
| 21   DAVID H. KOCH, an individual; RICK CARUSO, an individual; TINA CARUSO, an individual, | [Request for Judicial Notice and Appendix of Unpublished Authorities Filed Concurrently Herewith] |
| 22 | |
| 23                   Defendants. | Date:    February 21, 2017 |
| 24 | Time:    1:30 p.m. <br> Court:    Courtroom 1345 <br>            US Bankruptcy Court |
| 25 | 255 E. Temple Street <br> Los Angeles, CA 90012 |
| 26 | Judge:    Hon. Robert N. Kwan |
| 27 | |
| 28 | |

1  **TO THE HONORABLE ROBERT N. KWAN, UNITED STATES BANKRUPTCY**

2  **JUDGE AND THE PLAINTIFF AND HIS COUNSEL:**

3      **PLEASE TAKE NOTICE** that on February 21, 2017, at 1:30 p.m., or as soon thereafter

4  as the matter may be heard, before the Honorable Robert N. Kwan, United States Bankruptcy

5  Judge, in Courtroom 1345 of the United States Bankruptcy Court located in the Edward R.

6  Roybal Federal Building and Courthouse, 255 E. Temple Street, Los Angeles, California, 90012,

7  Defendant David H. Koch will and hereby does move (the "Motion")[1] to dismiss the First

8  Amended Complaint filed herein by Plaintiff John J. Menchaca, Trustee  ("Plaintiff") for the

9  Chapter 7 Estate of Debtor TIFKAH f/k/a the House Research Institute ("HRI").

10      This motion is made pursuant to Fed. R. Civ. P. Rule 12(b)(6) as incorporated herein by

11  Fed. R. Bankr. P. 7012 on the grounds that the Complaint fails to state a valid claim for relief

12  against the Defendant.

13      This Motion is based on this Notice of Motion and Motion, the attached Memorandum of

14  Points and Authorities, the Request for Judicial Notice filed concurrently herewith, the Appendix

15  of Unpublished Authorities filed concurrently herewith, the other files, records, pleadings and

16  papers in this adversary proceeding, any reply papers that may be filed in connection, and on such

17  further oral or documentary evidence as may be presented at or before the hearing in this matter.

18      **PLEASE TAKE FURTHER NOTICE** that in accordance with Local Bankruptcy

19  Rule 9013-1(f), any response or opposition to the Motion must be in writing in the form required

20  by Local Bankruptcy Rule 9013-1(f)(1), and must be filed with the Court and served on counsel

21  for the Defendant at the addresses listed on page 1 of this Motion, and on the Office of the United

22  States Trustee at 915 Wilshire Boulevard, Suite 1850, Los Angeles, California, 90017, at least

23  fourteen (14) days prior to the date of the hearing on the Motion.

24      //

25      //

26      //

27      //

28

---

[1]  The Defendant reserves the right to file separate papers on reply, if required or advisable.

2

NOTICE OF MOTION AND
MOTION TO DISMISS COMPLAINT

1    **PLEASE TAKE FURTHER NOTICE** that as set forth in Local Bankruptcy Rule 9013-

2    1(h), the failure to timely file and serve an opposition or other response to the Motion may be

3    deemed by the Court to constitute consent to the granting of the Motion.

4

5    Dated: January 19, 2017                          Respectfully submitted,

6

7                                                     ORRICK, HERRINGTON & SUTCLIFFE
                                                     LLP
8
                                                     By: _____
9
                                                     Jonathan P. Guy
10                                                   Jeffery D. Hermann

11                                                   ATTORNEYS FOR DAVID H.  KOCH

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION AND SUMMARY OF ARGUMENT ................................................... 1

II.    PLAINTIFF'S ALLEGATIONS AND UNDISPUTED FACTS ..................................... 5

III.   PROCEDURAL BACKGROUND.................................................................................. 8

IV.    LEGAL STANDARD FOR MOTION TO DISMISS ..................................................... 10

V.     LAW APPLICABLE TO ALLEGATIONS ASSERTED IN PLEDGE
       COMPLAINT ............................................................................................................... 11

       A.     Law Governing Ordinary Breach of Contract Claims ........................................ 11

       B.     Law Governing Use of Charitable Funds............................................................ 12

       C.     Law Governing Assumption of Executory Contracts in Chapter 7 ..................... 16

VI.    DISCUSSION ............................................................................................................... 16

VII.   CONCLUSION ............................................................................................................. 21

INDIVIDUAL D&O DEFS.' MOTION FOR COMFORT
ORDER MODIFYING STAY TO AUTHORIZE
ADVANCEMENT OF D&O LIABIL

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*Ashcroft v. Iqbal,*
5     556 U.S. 662 (2009) ................................................................................2, 9, 10, 11, 19

6 *Balistreri v. Pacifica Police Dep't,*
    901 F.2d 696 (9th Cir. 1988) ...............................................................................10
7

8 *Bank of Am. Nat'l Tr. & Sav. Ass'n v. Arakelian,*
    171 Cal. App. 2d 732, 341 P.2d 61 (Cal. Ct. App. 1959) ....................................13

9 *Bell Atl. Corp. v. Twombly,*
10     550 U.S. 544 (2007) ........................................................................................10,11

11 *Boston Reg'l Med. Ctr. v. Reynolds (In re Boston Reg'l Med. Ctr.),*
    410 F.3d 100 (1st Cir. 2005) ..........................................................................15, 16
12

13 *Bramalea California, Inc. v. Reliable Interiors, Inc.,*
    119 Cal. App. 4th 468, 14 Cal. Rptr. 3d 302 (Cal. Ct. App. 2004)......................12

14 *Cali v. Rosenberg,*
15     No. 93-15862, 1994 WL 721802 (9th Cir. Dec. 29, 1994) ..................................17

16 *Consol. World Invs., Inc. v. Lido Preferred Ltd.,*
    9 Cal. App. 4th 373, 11 Cal. Rptr. 2d 524 (Cal. Ct. App. 1992).........................11
17

18 *In re Coupon Clearing Serv.,*
    113 F.3d 1091 (9th Cir. 1997).......................................................................14, 15

19 *In re Crummie,*
20     194 B.R. 230 (Bankr. N.D. Cal. 1996)...........................................................16, 20

21 *Davis v. HSBC Bank Nev., N.A.,*
    691 F.3d 1152 (9th Cir. 2012)..............................................................................11
22

23 *Filet Menu, Inc. v. C.C.L. & G. Inc.,*
    79 Cal. App. 4th 852, 94 Cal. Rptr. 2d 438 (Cal. Ct. App. 2000)...................12, 19

24 *Foley v. Bates,*
25     No. C07-0402 PJH, 2007 WL 1430096 (N.D. Cal. May 14, 2007)...................12, 16

26 *Griffel v. Murphy (In re Wegner),*
    839 F.2d 533 (9th Cir. 1988)................................................................................16
27

28 *Holt v. Coll. of Osteopathic Physicians & Surgeons,*
    61 Cal. 2d 750, 40 Cal. Rptr. 244 (Cal. 1964) ....................................................13

ii

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Hood v. Hartford Life & Acc. Ins. Co.*,
No. 07-CV-01634, 2009 WL 453115 (E.D. Cal. Feb. 23, 2009)...........................................12

*Ins. Underwriters Clearing House, Inc. v. Natomas Co.*,
184 Cal. App. 3d 1520, 228 Cal. Rptr. 449 (Cal. Ct. App. 1986)............................................18

*Intri-Plex Techs., Inc. v. Crest Grp., Inc.*,
499 F.3d 1048 (9th Cir. 2007)....................................................................................................11

*L.B. Research & Educ. Found. v. UCLA Found.*,
130 Cal. App. 4th 171 29 Cal. Rptr. 3d 710 (2005).................................................................14

*Local 11500 v. Akridge (In re Akridge)*,
89 B.R. 66 (B.A.P. 9th Cir. 1988)..............................................................................................17

*Lortz v. Connell*,
273 Cal. App. 2d 286, 78 Cal. Rptr. 6 (Cal Ct. App. 1969)................................................11, 16

*Lynch v. Spilman*,
67 Cal. 2d 251, 62 Cal. Rptr. 12 (Cal. 1967) ........................................................................13, 14

*Mitsui Mfrs. Bank v. Unicom Computer Corp. (In re Unicom Computer Corp.)*,
13 F.3d 321 (9th Cir. 1994).........................................................................................................14

*N. Star Int'l v. Ariz. Corps. Comm'n*,
720 F.2d 578 (9th Cir.1983)........................................................................................................11

*People v. Orange Cnty. Charitable Servs.*,
73 Cal. App. 4th 1054, 87 Cal. Rptr. 2d 254 (Cal. Ct. App. 1999)....................................13, 19

*Plotnik v. Meihaus*,
208 Cal. App. 4th 1590, 146 Cal. Rptr. 3rd 585 (Cal. Ct. App. 2012) .....................................12

*Revis v. Ohio Chamber Ballet*,
No. 24696, 2010 WL 1986430 (Ohio Ct. App. May 19, 2010)..................................................14

*Salisbury v. Ameritrust Tex., N.A. (In re Bishop Coll.)*,
151 B.R 394 (Bankr. N.D. Tex. 1993)........................................................................................14

*Seamen v. Valley Health Care Med. Grp., Inc.*,
No. SA CV 13-1709-DOC, 2015 WL 9093593 (C.D. Cal. Dec. 16, 2015).........................12, 19

*Skilstaf, Inc. v. CVS Caremark Corp.*,
669 F.3d 1005 (9th Cir. 2012).....................................................................................................11

iii

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Title Ins. and Trust Co. v. SS. Peter and Paul Congregation (Estate of Klinkner)*,
  85 Cal. App. 3d 942, 151 Cal. Rptr. 20 (Cal. Ct. App. 1978)....................................................13

*Tort Claimants Comm. v. Roman Catholic Archbishop* (*In re Roman Catholic
  Archbishop*),
  345 B.R. 686 (Bankr. D. Or. 2006).............................................................................................14

*Troyk v. Farmers Grp., Inc.*,
  171 Cal. App. 4th 1305, 90 Cal. Rptr. 3d 589 (Cal. Ct. App. 2009)..................................11, 18

*In re Wolf & Vine, Inc.*,
  118 B.R. 761 (Bankr. C.D. Cal. 1990)........................................................................................17

**Statutes**

11 U.S.C. § 365 ...............................................................................................................16, 20

11 U.S.C. § 541 .........................................................................................................14, 15, 19

28 U.S.C. § 1927 .....................................................................................................................17

Cal. Bus. & Prof. Code § 17510.8 ......................................................................................13, 19

Cal. Civ. Code § 1439.........................................................................................4, 12, 18, 19

Cal. Gov't Code § 12591 ........................................................................................................13

Cal. Gov't Code § 12598 ........................................................................................................13

Cal. Prob. Code § 15407.........................................................................................................13

**Other Authorities**

California Civil Jury Instructions 303..........................................................................................11

10 Collier on Bankruptcy ¶ 9011.01 .........................................................................................17

Fed. R. Bankr. P. 7008 .............................................................................................................21

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

Fed. R. Bankr. P. 7012 ..................................................................................................10, 21

Fed. R. Bankr. P. 9011 ......................................................................................................17

Fed. R. Civ. P. 8 ................................................................................................................21

Fed. R. Civ. P. 11 ..............................................................................................................17

Fed. R. Civ. P. 12(b)(6).........................................................................................2, 8, 9, 10, 21

1     **MEMORANDUM OF POINTS AND AUTHORITIES**

2 **I.**     **INTRODUCTION AND SUMMARY OF ARGUMENT**

3       1.     Mr. David H. Koch ("Defendant" or "Mr. Koch") moves this Court to dismiss the

4 First Amended Complaint (the "Amended Pledge Complaint") brought by John J. Menchaca,

5 ("Plaintiff"), the bankruptcy trustee for the House Research Institute ("HRI").

6       2.     Plaintiff's original complaint asserted a single count for breach of contract. Plaintiff

7 alleged that Defendant was contractually bound to donate the last two of five $1 million pledges,

8 which pledges were designated for ongoing research at the David H. Koch Center for Hearing

9 Restoration (the "Koch Center" or "Center"). The Center was operated by HRI. One pledge was

10 due December 31, 2013; the last, December 31, 2014. The Complaint demanded that the Court

11 order Defendant to pay the monies over to Plaintiff, not for the purpose of hearing restoration

12 research, but to pay unknown and unidentified creditors of the Center. Problematically for Plaintiff,

13 however, he needed but failed to allege, with certainty and without ambiguity, that HRI was capable

14 of performing, and in fact performing, hearing restoration research when the pledges were due.

15 This is because well-established California statutory and common law, the Bankruptcy Code, and

16 bankruptcy law all provide that donors are not obliged to make gifts to a defunct charity that is no

17 longer capable of performing the donor's designated charitable purpose.[2] Defendant duly moved

18 to dismiss. In response, Plaintiff did not say to the Court: "My mistake, I represent to the Court

19 that all the facts and information in my possession demonstrate HRI was most certainly performing

20 hearing restoration research at the end of December 2013 and 2014, and I will amend the complaint

21 to fix that." Rather, he argued something very different indeed, the legal equivalent of a Hail Mary

22 pass. Specifically, Plaintiff argued that, under the pledge agreement, HRI was not required to

23 perform hearing restoration research at any time. Plaintiff's theory was that the pledge agreement

24 was not an executory contract with performance due from HRI (hearing restoration research)

25 following each successive payment. Instead, Plaintiff maintained that HRI's right to all five

26

27

28   [2]      Defendant did, in fact, make the first three $1 million pledges before HRI ceased performing its charitable
purpose.

1  payments vested in December 2010. *See* Opp'n to Motion to Dismiss, Dkt No. 31 ("Plaintiff's

2  Opp'n") at 9-11 [Request for Judicial Notice ("RJN"), Ex. A].

3         3.      This Court disagreed with Plaintiff, rejecting his vesting theory, stating: "Plaintiff's

4  Complaint fails to state a claim upon which relief can be granted, as set forth in FRBP 12(b)(6), for

5  *all the reasons* set forth in the *Koch Motion*[.] The allegations in those respects are *conclusory,*

6  *ambiguous, and uncertain* and fail to set forth short and plain statements of claims showing that the

7  Plaintiff is entitled to relief[.]" *See* Order Granting Motions to Dismiss Complaint Against

8  Defendants Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, ¶ 5 (emphasis

9  added), Dkt. No. 43 (the "Dismissal Order") [RJN, Ex. B].    Back in September 2016, this Court

10  also reminded Plaintiff, in the context of dismissing Plaintiff's D&O Complaint, of the threshold

11  briefing requirements imposed on litigants by the Supreme Court's *Ashcroft v. Iqbal*, 556 U.S. 662

12  (2009) decision: "Facts are essential; conclusions are not facts. Conclusory statements are not facts

13  under [*Iqbal*] and I see a wealth of conclusory statements. I don't see adequate facts to support a

14  reasoned set of allegations to give rise to the complaint. For that reason, the complaint is

15  dismissed." *See* Hr'g Tr. re Motion to Dismiss Complaint Against Defendants Pursuant to Rule

16  12(b)(6) of the Federal Rules of Civil Procedure, No. 2:16-ap-01201-RK (Bankr. C.D. Cal. Sept.

17  28, 2016) [RJN, Ex. C] at 28:9-14. Defendant's motion to dismiss was granted with prejudice as

18  to the December 2014 pledge but, generously, this Court gave Plaintiff the chance, if it could do so

19  in good faith, of course, to amend the complaint to make specific allegations about performance of

20  its hearing restoration research obligations in December 2013. *Id.* Thus, in advance of amending

21  the original complaint, Plaintiff understood what was required of him. He had to provide plain,

22  non-conclusory, non-ambiguous, certain factual allegations showing, with specificity and without

23  speculation, that HRI was, in fact, **performing** hearing restoration research at the **end of December**

24  **2013** and was capable of doing so going forward.

25         4.      Now, Plaintiff has filed his Amended Pledge Complaint against Defendant for the

26  December 2013 pledge. *See* Trustee's First Amended Complaint for Breach of Contract filed by

27  John J. Menchaca against David H. Koch, et al., Adv. No. 2:16-ap-01266-RK (Bankr. C.D. Cal.),

28  Dkt. No. 50. It is this Complaint that Defendant seeks to dismiss, once and for all, by the instant

2

Motion.  The only substantive amendments made by Plaintiff that apply to Defendant are the following two sentences: "HRI used Koch's pledged payments to support the Koch Center for Hearing Restoration" and "[h]ad Koch made his required pledge payment in 2013, HRI would have been able to use those funds to support the Koch Center for Hearing Restoration." Am. Pledge Compl. ¶ 17.  Each of the two sentences is conclusory, uncertain, ambiguous, and bereft of the factual allegations needed for a valid complaint. The last sentence suffers from the additional infirmity of being wholly speculative as well as being inappropriately made for the open-ended period of the whole of 2013 when the only relevant date is *December 31, 2013*, when the pledge payment was due.  Indeed, the Amended Pledge Complaint, as a whole, is devoid of necessary factual allegations.  It lacks any allegation as to which pledged payments HRI used to support the Center, whether all of the payments were used exclusively for the Center's hearing restoration research, as required by the pledge, and what HRI, a defunct charity, would have done with Mr. Koch's funds in 2013 when it had no researchers.  Furthermore, in this context, the term "support" is vague and it does not establish that HRI was capable of performing its charitable purpose.

5.    Thus, given a chance by this Court to make the requisite factual allegations, Plaintiff fudged it, embracing coy, not-on-point, non-committal ambiguities.  Why? The reason is simple.  As Plaintiff well knows, from all the documents and information he has had in possession for over the last three years and his discussions with witnesses, HRI was absolutely incapable of performing hearing restoration research on December 31, 2013 and, in fact, wasn't doing so.  Plaintiff himself admits this in his own opposition to Defendant's earlier motion to dismiss: "HRI's "extreme financial difficulties, [] *came to a head in mid 2013*." *See* Pl's Opp'n at 6 [RJN, Ex. A] (emphasis added).  Further, as he admits in his own recently filed Amended D&O Complaint (as defined below), HRI was in violation of the terms of restricted donations, such as Defendant's, using them "for purposes other than the purposes for which they were designated and restricted" *as early as June 2012*, Am. D&O Compl. ¶¶ 105-106 [RJN, Ex. L]; HRI experienced a financial and liquidity crisis *at that time* and going forward; *id.* ¶¶ 86, 88, 109-112; HRI lost its researchers in *mid 2013*, *id.* ¶ 115; HRI was in default under its loan documents, which its lender would no longer agree to waive, culminating in the sale of its building *in early 2014*, *id.* ¶¶ 105, 112; and HRI filed for

NOTICE OF MOTION AND
MOTION TO DISMISS COMPLAINT

chapter 7 protection in *June 2014, id.* ¶ 5. So not only did Plaintiff fail to make the requisite factual allegations, but he also presented allegations, albeit conclusory, uncertain, and ambiguous, that are plainly at odds with his allegations in another complaint before this very Court, namely that HRI was incapable of performing its charitable purpose as of December 31, 2013. Knowing those damning contradictory facts concerning HRI's inability to perform its charitable purpose, each of which he advances in his D&O Complaint, Plaintiff necessarily, of course, cannot allege with certainty and specificity that HRI was alive and well and performing hearing restoration research at the end of December 2013. And that is why, in response to the first motion to dismiss, Plaintiff did not even attempt to argue performance but relied instead on his now rejected Hail Mary pass argument that HRI's right to all payments vested in 2010 and HRI did not need to perform. The bottom line here is that Plaintiff cannot allege what he must for his complaint to survive and has never been able to do so. Plaintiff's Amended Pledge Complaint still fails to allege the requisite element of performance and must be dismissed with prejudice.

6.    The Amended Pledge Complaint should also be dismissed with prejudice because Plaintiff cannot claim damages for his breach of contract claim. Under all applicable law, a payment on a designated charitable pledge must be held in trust and, as such, cannot become property of the bankruptcy estate. Consequently, Plaintiff's bankruptcy estate cannot be damaged by a payment that it was never legally entitled to receive or keep. Moreover, the Amended Pledge Complaint does not even allege how the estate is damaged with requisite specificity. All it says is that HRI was damaged because it "had costs (and now claims) related to the Koch Center for Hearing Restoration." Am. Pledge Compl. ¶ 18. Plaintiff cannot even identify a single unpaid creditor of the Koch Center. That, just like the performance allegation, is conclusory, ambiguous, and uncertain. Similarly, Cal. Civ. Code § 1439 specifically recognizes that a party must fulfill all its obligations (not just some) before it is entitled to performance from a counterparty to a contract. Here, HRI did not perform the charitable purposes of the Center in December 2013 and, therefore, did not fulfill all of the conditions set forth in the alleged pledge. As such, Plaintiff has not pled and cannot plead the conditions necessary to recover the alleged payment. Last, the Amended Pledge Complaint should be dismissed because the pledge agreement is an executory contract with

performance due from both sides. Plaintiff failed to timely assume the pledge agreement and therefore it was rejected long before he even brought his original complaint. This rejection excuses any obligations from Defendant. Indeed, the reason Plaintiff never tried to assume the pledge is the same reason he had to advance his short-lived vesting theory: he knew HRI was incapable of performance before the end of December 2013, he could not cure any defaults, and the pledge could, therefore, never have been assumed.

7.    Accordingly, for these and other reasons discussed in detail below, Plaintiff's claim for breach of contract against Defendant fails. The Amended Pledge Complaint should be dismissed with prejudice, without leave to amend.

## II.    PLAINTIFF'S ALLEGATIONS AND UNDISPUTED FACTS

8.    The following is drawn directly from Plaintiff's own allegations and is only accepted as true for purposes of this Motion. Defendant reserves the right to dispute all of Plaintiff's allegations. Reference is also made to limited undisputed facts from the Court's docket of which the Court may take judicial notice.

9.    HRI was established in 1946 by Dr. Howard House and incorporated under the California Nonprofit Public Benefit Corporation Law. Am. Pledge Compl. ¶ 8. HRI grew to become one of the country's most renowned research facilities for hearing disorders. *Id.* However, as set forth in Plaintiff's Amended D&O Complaint, beginning with the financial crisis in 2008 and continuing thereafter, HRI experienced ever-worsening financial difficulties. Am. D&O Compl. ¶ 70 [RJN, Ex. L].[3] By the end of 2012, donors had discontinued funding because, among other reasons, their donations were "spent for purposes other than purposes for which they were designated and restricted," including, in June 2012, the use of $15 million of permanently restricted endowment funds for operational expenses. *Id.* ¶¶ 105-106. Midway through 2013, HRI's researchers left to work at USC and UCLA. *Id.* ¶ 115. In February 2014, HRI's lender, City

---

[3]    For purposes of this memorandum, Defendant is citing Plaintiff's allegations set forth in the Amended D&O Complaint. The allegations contained in the Amended D&O Complaint are substantially similar to those in the Original D&O Complaint (as defined below), which were referenced in Defendant's initial motion to dismiss. *See* Dkt. No. 20.

National Bank ("CNB"), formally initiated foreclosure proceedings. CNB Compl., Case No. 2:14-bk-21532-RK (Bankr. C.D. Cal.) (the "Main Case"), Dkt. No. 39-3 at 19–39 [RJN, Ex. D].

10.    Shortly thereafter, HRI sold substantially all its assets, including its principal asset, a five-story building located in Los Angeles, California, and its ground lease, to RP WIP LA Med Office Leasehold Owner, LLC ("Watt") in exchange for, among other things, Watt assuming all but $1 million of HRI's existing loan obligations to CNB (which totaled approximately $30 million) (the "Watt Transaction").    Am. D&O Compl. ¶¶ 161 [RJN, Ex. L]; Watt Purchase Agreement (Part I), Main Case Docket No. 39-5 at 39–58; Watt Purchase Agreement (Part II), Main Case Docket No. 39-6 at 1–58 [RJN, Exs. M, N]; *see also* Trustee's Motion for Approval of Settlement Agreement and Supporting Declaration, Main Case Docket No. 39 at 1–18 [RJN, Ex. E]. The Watt Transaction was consummated on or about June 6, 2014. Am. D&O Compl. ¶ 169 [RJN, Ex. L]. On June 12, 2014 (the "Petition Date"), HRI filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. Am. Pledge Compl. ¶ 3.

11.    Plaintiff was appointed as the bankruptcy trustee and continues to serve in that capacity as of the date hereof. *Id.* ¶ 4. Plaintiff became the bankruptcy trustee for TIFKAH following the Court approving the sale of substantially all of HRI's remaining assets.    Order Granting Motion of Chapter 7 Trustee for Order:  (1) Authorizing Sale of Estate's Right, Title and Interest in Certain Personal Property, Free and Clear of Liens, Interests, and Encumbrances; (2) Finding that Buyers are Good Faith Purchasers; (3) Waiving Rule 6004(h) Automatic Stay of Order; and (4) Related Relief (the "Sale Order"), Main Case Docket No. 67 ¶ 25 [RJN, Ex. F].

12.    Plaintiff did not list Mr. Koch's alleged pledge in any schedule of executory contracts, including any agreement with Defendant. *See* Amended Schedule(s) and/or Statement(s) filed by HRI, Main Case Docket No. 19 at Sched. G [RJN, Ex. G]. Further, on August 20, 2014, the Court entered an order that extended the time for Plaintiff to assume or reject its executory contracts from August 11, 2014, to November 10, 2014. *See* Order Granting Trustee's Motion for Order Extending the Time within which to Assume or Reject Executory Contracts and Unexpired Leases of Personal Property, Main Case Docket No. 32 [RJN, Ex. H]. Despite this extension of time, Plaintiff did not file a motion to assume Mr. Koch's alleged pledge.

13.     In September 2014, this Court approved Plaintiff's settlement with Watt, which called for Watt to pay $300,000 to Plaintiff to settle claims that Watt did not pay equivalent value for the Property.    Trustee's Motion for Approval of Settlement Agreement and Supporting Declaration, Main Case Docket No. 39 at 1–18 [RJN, Ex. E].

14.     On November 20, 2014, the Court entered the Sale Order which approved the sale by Plaintiff of substantially all of HRI's remaining assets to the House Clinic Foundation ("Buyer"), including HRI's corporate entity, corpus, capital stock, and name. Sale Order ¶ 4 [RJN, Ex. F]. Plaintiff purportedly reserved the right to sue donors for unpaid charitable pledges but did so in the name of *TIFKAH*, not HRI. *Id.* ¶¶ 5, 25. Mr. Koch did not receive notice of Plaintiff's sale motion. Notice of Hearing on Chapter 7 Trustee's Motion for Order: (1) Authorizing Sale of Estate's Right, Title and Interest in Certain Personal Property, Free and Clear of Liens, Interests, and Encumbrances, to House Clinic Foundation; (2) Finding that Buyer is a Good Faith Purchaser; (3) Waiving Rule 6004(h) Automatic Stay of Order; and (4) Related Relief, Main Case Docket No. 52 [RJN, Ex. I].

15.     On April 26, 2016, Plaintiff, as bankruptcy trustee for the TIFKAH chapter 7 estate, filed a complaint (the "Original D&O Complaint") against HRI's Board of Trustees (the "Board") and its chief executive officer alleging, *inter alia*, that the defendants in that proceeding breached their fiduciary duties and committed corporate waste when authorizing the sale of substantially all of HRI's assets, i.e., the very sale that Plaintiff himself settled with Watt two years prior.  *See* Complaint filed by John J. Menchaca against Wallis Annenberg, et al., Adv. No. 2:16-ap-01201-RK (Bankr. C.D. Cal.), Dkt. No. 1 [RJN, Ex. J].

16.     On June 10, 2016, nearly two years after the Petition Date, Plaintiff filed the original pledge complaint (the "Original Pledge Complaint") against Mr. Koch, Rick and Tina Caruso, Stephen and Sue Chandler, and the Scottsdale Foundation.  *See* Complaint filed by John J. Menchaca against David H. Koch, et al., Adv. No. 2:16-ap-01266-RK (Bankr. C.D. Cal.), Dkt. No. 1 [RJN, Ex. K].

17.     As to Mr. Koch, Plaintiff alleged that he pledged to donate $5 million to HRI in $1 million increments over a five-year period, starting at the end of December 2010 and ending

7

NOTICE OF MOTION AND
MOTION TO DISMISS COMPLAINT

1  December 31, 2014. *Id.* ¶ 14. Plaintiff further alleged that the pledged donations were expressly

2  designated for the Center. *Id.* Last, Plaintiff alleged that Mr. Koch made payments of $1 million

3  on December 30, 2010, December 29, 2011, and August 30, 2012 (acquiescing to accelerate the

4  third payment earlier than required under the pledge agreement ), but did not make the payments

5  due on December 31, 2013 and December 2014. *Id.* ¶¶ 16–20, Ex. A.

6         18.     In the Original Pledge Complaint, Plaintiff brought one claim for relief—breach of

7  contract—against Mr. Koch. The Original Pledge Complaint alleged that HRI "was and is damaged

8  by the failure of Koch to make the fourth and fifth $1 million payments on his $5 million pledge,

9  as it had costs (and now has claims) related to the [Center]." *Id.* ¶ 22.[4] Fatally, Plaintiff did not

10  allege when these alleged costs were incurred, in what amount, by whom, or why such costs were

11  unpaid in that Mr. Koch previously donated $1 million for the Center in December 2010, 2011, and

12  2012.  Plaintiff also did not allege that HRI used the funds previously donated by Mr. Koch

13  exclusively for the Center's hearing restoration research. Nor did Plaintiff allege how an agreement

14  between HRI and Mr. Koch is enforceable by an entirely separate corporate entity, without notice

15  or assignment.   Most important of all, Plaintiff did not allege that HRI was capable of performing

16  hearing restoration research under the alleged pledge agreement as of December 31, 2013 and 2014

17  and that HRI was, in fact, conducting that research.  In other words, Plaintiff failed to adequately

18  allege that HRI was a fully functioning and operating charitable institution. Notably, the allegations

19  in the Original D&O Complaint and repeated in the Amended D&O Complaint concerning HRI's

20  demise, its misuse of donor gifts, and its inability to perform its charitable purpose as early as 2012,

21  were all absent from the Original Pledge Complaint.

22  **III.    PROCEDURAL BACKGROUND**

23         19.     Following the Plaintiff's filing of the Original Pledge Complaint, all defendants,

24  including Mr. Koch, filed individual motions to dismiss pursuant to Rule 12(b)(6). The defendants

25  subject to the Original D&O Complaint also moved to dismiss that action.

26         20.     In his motion to dismiss the Original Pledge Complaint, Mr. Koch argued, among

27  other things, that California law provides that a plaintiff must plead performance to establish a valid

28

---

[4]    Plaintiff has not sought Court approval to retain the law firm that has commenced this adversary proceeding.

NOTICE OF MOTION AND
MOTION TO DISMISS COMPLAINT

breach of contract claim.  Plaintiff conceded this in his opposition but maintained, relying on his vesting theory, that he had satisfied California's contract claim pleading requirements by alleging, without more, that "[HRI] created the Koch Center for Hearing Restoration" back in 2010.  Original Pledge Compl. ¶ 15 [RJN, Ex. K]; Pl's Opp'n at 7 [RJN, Ex. A].  Critically, consistent with the admissions in the Original D&O Complaint, Plaintiff also admitted in his opposition that HRI's "extreme financial difficulties, [] *came to a head in mid 2013*."  *See* Pl's Opp'n at 6 [RJN, Ex. A] (emphasis added).

21.    The Court issued a tentative ruling granting Defendant's motion to dismiss the Original Pledge Complaint.  *See* Tentative Rulings for Oct. 19, 2016 Calendar of Hon. Thomas B. Donovan [RJN, Ex. O].  Plaintiff chose not to appear to contest the tentative ruling and on November 4, 2016, the Court issued its Dismissal Order granting the motion and noting its agreement with Defendants' arguments.  Specifically, the Court held that dismissal was warranted because the allegations set forth in the Original Pledge Complaint were "conclusory, ambiguous and uncertain and fail to set forth short and plain statements of claims showing that the Plaintiff is entitled to relief . . . ."  Dismissal Order ¶ 5 [RJN, Ex. B].  As to Mr. Koch, the Court gave Plaintiff leave to amend the Original Pledge Complaint with respect to the December 2013 payment.  *Id.* ¶ 2.

22.    The Court also issued a tentative ruling granting the defendants' motion to dismiss the Original D&O Complaint, with leave to amend.  There, Plaintiff did contest the ruling and extensive oral argument took place.  The Court, however, did not change its mind and issued an order granting that motion.  At oral argument, the Court noted that the Original D&O Complaint failed to meet the pleading standard set forth in *Iqbal* because it contained nothing more than conclusions, not facts.  *See* Hr'g Tr. re Motion to Dismiss Complaint Against Defendants Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, No. 2:16-ap-01201-RK (Bankr. C.D. Cal. Sept. 28, 2016) [RJN, Ex. C] at 28:9-10.  Of some moment to the instant motion, the Court correctly explained that under *Iqbal*, "[f]acts are essential; conclusions are not facts.  Conclusory statements are not facts under [*Iqbal*] and I see a wealth of conclusory statements.  I don't see adequate facts

1    to support a reasoned set of allegations to give rise to the complaint. For that reason, the complaint

2    is dismissed." *Id.* at 28:9-14.

3        23.    On November 28, 2016, Plaintiff filed an amended complaint (the "<u>Amended D&O</u>

4    <u>Complaint</u>") against the Board and HRI's chief executive officer alleging the same causes of action

5    as set forth in the Original D&O Complaint. *See* Complaint filed by John J. Menchaca against

6    Wallis Annenberg, et al., Adv. No. 2:16-ap-01201-RK (Bankr. C.D. Cal.), Dkt. No. 62 [RJN, Ex.

7    L].

8        24.    On December 22, 2016, Plaintiff filed the Amended Pledge Complaint. As to Mr.

9    Koch, it is substantively identical to the Original Pledge Complaint except that it drops the claim

10   for the December 2014 pledge. As to the December 2013 pledge, it says this time "HRI used

11   Koch's pledged payments to support the Koch Center for Hearing Restoration" and that "[h]ad

12   Koch made his required pledge payment in 2013, HRI would have been able to use those funds to

13   support the Koch Center for Hearing Restoration." Am. Pledge Compl. ¶ 17.   This allegation is

14   not supported by the facts that the Plaintiff himself is familiar with and has alleged in the Original

15   D&O Complaint and again in the Amended D&O Complaint, which defendants have again moved

16   to dismiss. *See* Am D&O Compl. ¶¶ 70, 105-106, 115 [RJN, Ex. L]. Plaintiff also alleges in the

17   Amended Pledge Complaint, as he did before, that HRI "was and is damaged" by Mr. Koch not

18   paying the December 2013 installment "as [HRI] had costs (and now has claims) related to the

19   Koch Center for Hearing Restoration." Am. Pledge Compl. ¶ 17.

20   **IV.    <u>LEGAL STANDARD FOR MOTION TO DISMISS</u>**

21       25.    Under Fed. R. Civ. P. 12(b)(6), as incorporated herein by Fed. R. Bankr. P. 7012, a

22   defendant may move to dismiss a pleading for "failure to state a claim upon which relief can be

23   granted." Dismissal is proper under Rule 12(b)(6) where there is either a "lack of a cognizable

24   legal theory" or "the absence of *sufficient facts* alleged under a cognizable legal theory." *Balistreri*

25   *v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir. 1988)(emphasis added).   A complaint does

26   not "suffice if it tenders 'naked assertion[s]' devoid of '*further factual enhancement*.'" *Ashcroft v.*

27   *Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007))

28   (emphasis added). Rather, a plaintiff must allege facts that, if accepted as true, are sufficient "to

1    raise a right to relief above the *speculative level*" and to "state a claim to relief that is plausible on

2    its face." *Twombly*, 550 U.S. at 555, 570 (emphasis added).  A complaint has "facial plausibility

3    when the plaintiff pleads *factual content* that allows the court to draw the reasonable inference that

4    the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (emphasis added).

5    Accordingly, dismissal is proper if a complaint is "vague, conclusory, and fails to set forth any

6    material facts in support of the allegation." *See N. Star Int'l v. Ariz. Corps. Comm'n*, 720 F.2d 578,

7    583 (9th Cir. 1983).

8          26.    While a court generally may not consider materials beyond the pleadings in ruling

9    on a motion to dismiss, a "court may take judicial notice of matters of public record without

10   converting a motion to dismiss into a motion for summary judgment, as long as the facts noticed

11   are not subject to reasonable dispute." *Intri-Plex Techs., Inc. v. Crest Grp., Inc.*, 499 F.3d 1048,

12   1052 (9th Cir. 2007) (citation and internal quotation marks omitted). Courts may also consider

13   documents that are incorporated into the complaint by reference so long as no party questions their

14   authenticity. *See Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1160 (9th Cir. 2012); *Skilstaf,*

15   *Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1016 n.9 (9th Cir. 2012).

16   **V.    LAW APPLICABLE TO ALLEGATIONS ASSERTED IN PLEDGE COMPLAINT**

17         **A.    Law Governing Ordinary Breach of Contract Claims**

18         27.    To successfully plead a claim for simple breach of contract under California law, a

19   plaintiff must allege facts to support each element: (1) the existence of a contract; (2) plaintiff's

20   performance; (3) defendant's breach; and (4) damages.  *See* Judicial Council of California Civil

21   Jury Instructions 303; *Troyk v. Farmers Grp., Inc.*, 171 Cal. App. 4th 1305, 1352, 90 Cal. Rptr. 3d

22   589, 628 (Cal. Ct. App. 2009).

23         28.    To satisfy the second element, a plaintiff must plead in its complaint that it has

24   performed its own obligations under that contract when due.  *See Consol. World Invs., Inc. v. Lido*

25   *Preferred Ltd.*, 9 Cal. App. 4th 373, 380, 11 Cal. Rptr. 2d 524, 527 (Cal. Ct. App. 1992) ("It is

26   elementary a plaintiff suing for breach of contract must prove it has performed all conditions on its

27   part or that it was excused from performance."). A plaintiff's failure to allege this one element

28   constitutes a sufficient basis for dismissing its complaint.  *See Lortz v. Connell*, 273 Cal. App. 2d

1    286, 291, 78 Cal. Rptr. 6, 9 (Cal. Ct. App. 1969) (granting motion for judgment on pleadings

2    because complaint did not allege "the plaintiff performed all that he was obligated to perform prior

3    to" the alleged breach); *Foley v. Bates*, No. C07-0402 PJH, 2007 WL 1430096, at *4 (N.D. Cal.

4    May 14, 2007) (dismissing complaint due to plaintiff's failure to allege performance under

5    contracts).

6        29.    As to the third element, if the plaintiff is or was in material breach that excuses

7    performance by the innocent, non-breaching party. *See Seamen v. Valley Health Care Med. Grp.,*

8    *Inc.*, No. SA CV 13-1709-DOC (RNB), 2015 WL 9093593, at *4 (C.D. Cal. Dec. 16, 2015) (finding

9    material breach is a breach so material and important that it justifies the injured party in viewing

10    "the whole transaction as at an end"); *Plotnik v. Meihaus*, 208 Cal. App. 4th 1590, 1602, 146 Cal.

11    Rptr. 3rd 585, 596 (Cal. Ct. App. 2012).  Necessarily, the materially breaching party may not

12    enforce a contract against a non-breaching party. *See Filet Menu, Inc. v. C.C.L. & G. Inc.*, 79 Cal.

13    App. 4th 852, 861, 94 Cal. Rptr. 2d 438 (Cal. Ct. App. 2000); Cal. Civ. Code § 1439 ("Before any

14    party to an obligation can require another party to perform any act under it, he must fulfill all

15    conditions precedent thereto imposed upon himself; and must be able and offer to fulfill all

16    conditions concurrent so imposed upon him on the like fulfillment by the other party . . . .").

17        30.    And, of course, as to the last element, a plaintiff must allege certain, not conclusory

18    or vague, damages in order to state a claim for breach of contract. *Hood v. Hartford Life & Acc.*

19    *Ins. Co.*, No. 07-CV-01634, 2009 WL 453115, at *3 (E.D. Cal. Feb. 23, 2009).  A plaintiff's failure

20    to adequately plead damages results in dismissal.  *See Bramalea California, Inc. v. Reliable*

21    *Interiors, Inc.*, 119 Cal. App. 4th 468, 473, 14 Cal. Rptr. 3d 302, 306 (Cal. Ct. App. 2004) ("A

22    breach of contract is not actionable without damage.").

23        **B.    Law Governing Use of Charitable Funds**

24        31.    In addition to the generic breach of contract requirements above, a chapter 7 trustee

25    of a defunct charitable organization who wishes to bring a breach of contract claim concerning a

26    designated charitable pledge must also satisfy the specific requirements of California law (statutory

27    and common) and bankruptcy governing such pledges.

28

i.    **California Statutory and Common Law**

32.    California's Business and Professional Code mandates that "[t]he acceptance of charitable contributions by a charity or any person soliciting on behalf of a charity establishes a charitable trust and a duty on the part of the charity and the person soliciting on behalf of the charity to use those charitable contributions *for the declared charitable purposes for which they are sought*." *See* Cal. Bus. & Prof. Code § 17510.8 (emphasis added); *People v. Orange Cnty. Charitable Servs.*, 73 Cal. App. 4th 1054, 1069 n.7, 87 Cal. Rptr. 2d 254, 264 (Cal. Ct. App. 1999) (explaining that when money is solicited "for a declared purpose, the donation must be used for that purpose and not for the general fund operations of a charity"); *Holt v. Coll. of Osteopathic Physicians & Surgeons*, 61 Cal. 2d 750, 754, 40 Cal. Rptr. 244, 247 (Cal. 1964) ("charitable contributions must be used only for the purposes for which they were received in trust"); *Bank of Am. Nat'l Tr. & Sav. Ass'n v. Arakelian*, 171 Cal. App. 2d 732, 734, 341 P.2d 61, 62 (Cal. Ct. App. 1959) (stating that conditions and restrictions of a charitable gift "must be observed"). In fact, under California's Probate Code, "[a] trust terminates when . . . [t]he trust becomes impossible to fulfill." *See* Cal. Prob. Code § 15407. California's attorney general is vested with authority to protect the assets held by charitable trusts and public benefit corporations and may institute proceedings to ensure compliance with applicable law. *See* Cal. Gov't Code §§ 12591, 12598.

33.    California common law concerning gifts to charities establishes similar principles. "It is generally held that a gift to a charitable or religious nonprofit corporation is deemed to have been made in trust 'to carry out the objects for which the organization was created.'" *Title Ins. and Trust Co. v. SS. Peter and Paul Congregation (Estate of Klinkner)*, 85 Cal. App. 3d 942, 946, 151 Cal. Rptr. 20, 22 (1978) (quoting *Lynch v. Spilman*, 67 Cal. 2d 251, 260, 62 Cal. Rptr. 12, 18 (Cal. 1967)); *Holt v. Coll. of Osteopathic Physicians & Surgeons*, 61 Cal. 2d 750, 754, 40 Cal. Rptr. 244, 247 (1964) ("charitable contributions must be used only for the purposes for which they were received in trust"). In *Klinkner*, a decedent's will provided for a gift in trust to a Catholic church that had been dissolved as a canonical entity but had continued its corporate existence as a "shell." *Id.* at 945–46. The court found that the church could not receive the charitable gift established in the decedent's will because the church could no longer use the gift "'to carry out the objects for

1    which the organization was created.'" *Id.* at 950 (citing *Lynch v. Spilman*, 67 Cal. 2d at 260); *see*

2    *also Revis v. Ohio Chamber Ballet*, No. 24696, 2010 WL 1986430 (Ohio Ct. App. May 19, 2010)

3    (denying trustee's motion to release endowment funds to pay ballet's debts where charitable gift

4    was contingent on ballet operating in furtherance of its charitable purposes).

5        34.    If a charity uses gifts for an unauthorized purpose, the donor may sue the charity for

6    breach of contract. *See L.B. Research & Educ. Found. v. UCLA Found.*, 130 Cal. App. 4th 171,

7    180-82, 29 Cal. Rptr. 3d 710, 716 (Cal. Ct. App. 2005) (holding that a donor who contributed

8    money to a charity for a specific purpose had standing to sue the charity for breach of contract,

9    declaratory relief, and specific performance).[5] Thus, it is not enough for a charity to say, "I honored

10   all the requirements of your prior designated pledges," rather it must say "I will be able to honor

11   the requirements of the pledge I want you to give now." It is for this obvious reason that a defunct

12   charity cannot compel a donor to contribute a pledge that cannot be used for its designated purpose.

13       ii.    **Bankruptcy Law**

14       35.    Bankruptcy law is equally protective of donor intent and insulates those assets from

15   distribution for any other purpose.

16       36.    Critically, for our current purposes, estate property does not include property held

17   in trust by a debtor under Section 541(d). *See Mitsui Mfrs. Bank v. Unicom Computer Corp. (In re*

18   *Unicom Computer Corp.*), 13 F.3d 321, 324 (9th Cir. 1994) (finding property held in trust by a

19   debtor for another is not property of the bankruptcy estate under § 541(d)); *Tort Claimants Comm.*

20   *v. Roman Catholic Archbishop (In re Roman Catholic Archbishop*), 345 B.R. 686, 693 (Bankr. D.

21   Or. 2006) (restricted church endowment containing $36 million held in charitable trust and thus

22   excluded from debtor's bankruptcy estate); *Salisbury v. Ameritrust Tex., N.A. (In re Bishop Coll.)*,

23   151 B.R 394, 397-98 (Bankr. N.D. Tex. 1993) (finding charitable trust is not property of bankruptcy

24   estate).

25       37.    The restriction, that estate property does not include property held in trust by a

26   debtor extends to constructive trusts "that arise by operation of state law." *See In re Coupon*

27

28   [5]    For this reason, if the Trustee were permitted to pursue his Amended Pledge Complaint, Defendant would
have counterclaims for misuse of earlier gifts, including Mr. Koch's prior gifts of $3 million, for which HRI was
unable to provide an accounting.

1   *Clearing Serv.*, 113 F.3d 1091, 1099 (9th Cir. 1997) ("Property that is held in trust by a debtor for

2   another, however, is not property of the estate."). California law, the state law at issue here,

3   properly reflects a strong public policy favoring donor intent with regard to charitable gifts and

4   prevents any payments made in connection with a pledge from becoming part of a bankruptcy estate

5   because any such payment creates a charitable trust. *See In re Coupon Clearing Serv.*, 113 F.3d at

6   1099.

7      38.    In addition, Section 541(f) of the Bankruptcy Code prohibits the transfer of property

8   owned by a tax-exempt charity to a taxable entity unless permitted by state law and Section

9   541(c)(2) recognizes property interests held in trust.

10      39.    Bankruptcy law is equally clear that if a charity can no longer fulfill its charitable

11   purpose, it may not use gifts held in trust or, of course, enforce pledges for gifts. In *Boston Reg'l*

12   *Med. Ctr.*, the First Circuit stated that "an organization cannot receive a charitable bequest *unless*

13   *it is both capable of using that bequest for the intended purpose and willing to do so.*" *Boston Reg'l*

14   *Med. Ctr. v. Reynolds (In re Boston Reg'l Med. Ctr.)*, 410 F.3d 100, 109 (1st Cir. 2005) (emphasis

15   added). In that case, the debtor charity (a non-profit hospital) brought an adversary proceeding

16   seeking a determination that the residue of charitable testamentary trusts needed to be turned over

17   to the estate despite the fact that the hospital ceased its operations. *Id.* at 104. The court readily

18   dismissed the lower court's reasoning that, since the hospital incurred past debts in furtherance of

19   its charitable mission, the payment of those debts now could be deemed charitable in nature. *Id.* at

20   111. The court explained: "In the usual case, however, the extension of credit is not itself an act

21   of charity, and in a real-world sense, the payment of debts after a hospital ceases operations does

22   not further the hospital's ability to carry out its charitable mission. For that reason, we think it

23   would be inconsistent with the [donor's] intent for a dead-as-a-doornail hospital to receive a portion

24   of the trust corpus with the understanding that it would be spent solely to reimburse credits for

25   debts previously incurred." *Id.* at 110. Therefore, the court found that a charitable organization

26   that has ceased to perform charitable work and is incapable of redirecting new funds for charitable

27   purposes is ineligible to receive a new charitable bequest or gift, noting that while "[that rule will

28   have the effect, in a few cases, of blocking a charity's creditors from access to a new source of

1   funds-[] that is small price to pay for honoring the [donor's] intent." *Id.* at 111. On the facts before

2   it, the court ultimately decided that the charity was entitled to receive the bequest because, unlike

3   here, at the time when the bequest was due, the charity was a fully operating hospital performing

4   its charitable purpose. *Id.* at 113.

5           **C.**    **Law Governing Assumption of Executory Contracts in Chapter 7**

6         40.    In the Ninth Circuit and elsewhere, executory contracts are defined as contracts

7   where "the obligations of both parties are so far unperformed that the failure of either party to

8   complete performance would constitute a material breach and thus excuse the performance of the

9   other." *Griffel v. Murphy (In re Wegner)*, 839 F.2d 533, 536 (9th Cir. 1988). Under section

10  365(d)(1) of the Bankruptcy Code, absent an extension of time granted by the court, a chapter 7

11  debtor must assume or reject an executory contract within 60 days of the petition date. 11 U.S.C.

12  § 365(d)(1). If an executory contract is not timely assumed, then it is deemed rejected. *Id.* To

13  assume an executory contract, a debtor must demonstrate that it can perform its obligations going

14  forward. *In re Crummie*, 194 B.R. 230, 238 (Bankr. N.D. Cal. 1996) ("Assumption of executory

15  contracts imposes burdens upon debtors to cure defaults promptly, assure future performance, and

16  adhere to all contract terms without adjustment . . . ."). Accordingly, a debtor will not be permitted

17  to assume an executory contract if it is incapable of performing thereunder.

18  **VI.**    **DISCUSSION**

19        41.    The Amended Pledge Complaint must be dismissed with prejudice.

20        42.    **First**, Plaintiff fails to allege that HRI was capable of performing hearing restoration

21  research at the end of December 2013 when the pledge was due; was, in fact, doing so; and would

22  be able to do so in 2014 when the funds were intended to be spent on such research. Thus, as

23  before, Plaintiff fails to allege a required element of his breach of contract pledge claim. *See Lortz*

24  *v. Connell*, 273 Cal. App. 2d 286, 291, 78 Cal. Rptr. 6, 9 (Cal Ct. App. 1969) (granting motion for

25  judgment on pleadings because complaint did not allege "the plaintiff performed all that he was

26  obligated to perform prior to" the alleged breach); *Foley v. Bates*, No. C07-0402 PJH, 2007 WL

27

28

1  1430096, at *4 (N.D. Cal. May 14, 2007) (dismissing complaint due to plaintiff's failure to allege

2  performance under contracts).

3      43.    Plaintiff cannot cure this deficiency even if this Court were inclined to give him a

4  third bite at the apple. *See Cali v. Rosenberg*, No. 93-15862, 1994 WL 721802, at *3 (9th Cir. Dec.

5  29, 1994) (upholding district court's dismissal of complaint with prejudice because plaintiff

6  implicitly admitted that it had no basis to make its averments in good faith and thus further

7  amendment would be futile). Specifically, as Plaintiff admits in his own opposition to Defendant's

8  earlier motion to dismiss, HRI's "extreme financial difficulties, [] came to a head in *mid 2013*."

9  *See* Pl's Opp'n at 6 [RJN, Ex. A] (emphasis added). Further, as he admits in his own Amended

10  D&O Complaint, HRI, in violation of the terms of restricted donations (such as Defendant's), was

11  using them "for purposes other than the purposes for which they were designated and restricted" *as*

12  *early as 2012, see*, Am. D&O Compl. ¶¶ 105-106 [RJN, Ex. L]; HRI experienced a financial and

13  liquidity crisis at that time and going forward; *id.* ¶¶ 86, 88, 109-112; HRI lost its researchers in

14  *mid 2013, id.* ¶ 115; HRI was the subject of foreclosure threats and proceedings by its lender,

15  culminating in the sale of its building in *early 2014, id.* ¶¶ 105, 112; CNB Compl. at 19-39 [RJN,

16  Ex. D]; and HRI filed for chapter 7 protection in *June 2014*, Am. D&O Compl. ¶ 5 [RJN, Ex. L].[6]

17      44.    Accordingly, Plaintiff cannot plead (and has not pled) the conditions necessary to

18  recover under California common law – that HRI was capable of performing and was performing

19

20

21  [6]    Bankruptcy Rule 9011 sets forth the rule that each party submitting a pleading before the court certifies to its truthfulness and propriety. *See* Fed. R. Bankr. P. 9011. The purpose of this rule is to deter baseless filings in bankruptcy court and thus "avoid unnecessary judicial effort, the goal being to make proceedings in that court more

22  expeditious and less expensive." 10 Collier on Bankruptcy ¶ 9011.01. Under Bankruptcy Rule 9011, each party represents, to the best of their "knowledge, information, and belief, formed after an inquiry reasonable under the

23  circumstances," that any filing submitted to the court is "not being presented for an improper purpose," the "claims, defenses, and other legal contentions therein are warranted by existing law," and "the allegations and other factual

24  contentions have evidentiary support." Fed. R. Bankr. P. 9011(b). Bankruptcy Rule 9011 also grants the court authority to sanction parties for filing frivolous actions or actions for an improper purpose. *See* Fed. R. Bankr. P.

25  9011(c); *In re Wolf & Vine, Inc.*, 118 B.R. 761, 767 (Bankr. C.D. Cal. 1990). This rule is essentially similar to Rule 11 of the Federal Rules of Civil Procedure. *See Local 11500 v. Akridge (In re Akridge)*, 89 B.R. 66, 68 (B.A.P. 9th

26  Cir. 1988).
    The prohibition against vexatious litigation is codified by statute in the U.S. Code, which provides for the

27  payment of costs and expenses incurred by a party as a result of such conduct. *See* 28 U.S.C. § 1927 ("Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies

28  the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.").

hearing restoration research when the pledge payment was due December 31, 2013. *See Troyk*, 171 Cal. App. 4th at 1352.

45.    **Second**, HRI had no right to the disputed pledge until December 31, 2013. As Plaintiff himself alleges in this chapter 7 case, by then HRI was defunct and, in fact, filed for relief under chapter 7 shortly thereafter on June 12, 2014. Applicable law, discussed in detail above, does not support the proposition that defunct HRI, even if it were not yet in chapter 7, could lay claim to a pledge which was due long after the Koch Center ceased performing its charitable function. Simply put, a party who agrees to make annual payments subject to certain conditions need not continue making them if the conditions are not fulfilled. Cal. Civ. Code § 1439 recognizes that a party must fulfill *all* its obligations (not just some) before it is entitled to performance from a counterparty to a contract: "Before any party to an obligation can require another party to perform any act under it, he must fulfill *all* conditions precedent thereto imposed upon himself; and must be able and offer to fulfill *all* conditions concurrent so imposed upon him on the like fulfillment by the other party . . . ." (Emphasis added). Here, HRI did not perform its charitable purposes, including the purposes of the Center, in December 2013 and, therefore, did not fulfill a key condition of the pledge.

46.    Accordingly, Plaintiff cannot (and has not) plead the conditions necessary to recover under California statutory law – that the funds would be used for their designated charitable purpose.

47.    **Third**, and this necessarily follows from the legal principle explained in the previous paragraph, the inability of the Debtor to perform as required under the pledge constitutes a material breach thereof, which may be resolved by the Court as a matter of law. "[I]f reasonable minds cannot differ on the issue of materiality, the issue may be resolved as a matter of law." *Ins. Underwriters Clearing House, Inc. v. Natomas Co.*, 184 Cal. App. 3d 1520, 1526-27, 228 Cal. Rptr. 449, 453 (Cal. Ct. App. 1986)). Here, reasonable minds *cannot* differ. The Debtor could not perform the special narrow purpose of the pledge.

48.    Thus, even without considering the near certainty that HRI diverted Defendant's prior payments for general purposes (Plaintiff makes that broad allegation in the Original D&O

18

1   Complaint and again in the Amended D&O Complaint), HRI's failure to perform by the middle of

2   2013 at the latest excused any further performance by Defendant and renders any purported

3   obligation to make any payment unenforceable. *See* Cal. Civ. Code § 1439; *Seamen* and *Filet*

4   *Menu, supra.*

5          49.    **Fourth**, Plaintiff has not adequately pled the element of damages. Plaintiff alleges

6   that HRI has been damaged because HRI "had costs (and now has claims) related to the Koch

7   Center for Hearing Restoration." Am. Pledge Compl. ¶ 18. But Plaintiff's bankruptcy estate could

8   never have been damaged by Defendant's alleged non-performance. This is because estate property

9   does not encompass funds held in trust, like any possible payments from Defendant. *See e.g.* Cal.

10  Bus. & Prof. Code § 17510.8; *People v. Orange Cnty. Charitable Servs.*, 73 Cal. App. 4th 1054,

11  1069 n.7, 87 Cal. Rptr. 2d 254, 264 (Cal. Ct. App. 1999); 11 U.S.C. § 541(d). Here, the pledge

12  payments were to fund hearing restoration research (which Plaintiff cannot allege they could

13  perform at the end of December 2013); they were never intended to pay past debts incurred by the

14  Debtor. *See* Am. Pledge Compl. ¶ 11 ("The pledge was designated for use for the 'David H. Koch

15  Center for Hearing Restoration.'").

16         50.    Moreover, Plaintiff's vague allegations of damages – unidentified "costs" and

17  "claims" – are insufficient to survive dismissal. Plaintiff fails to plead a single fact concerning

18  either a specific cost or a specific claim allegedly related to the Koch Center. This is remarkable

19  in that Plaintiff is the custodian of the limited claims filed against HRI's estate and should be

20  familiar with each and every one of them. With all that information, that he still cannot identify a

21  single unpaid creditor related to the Koch Center is telling indeed. We don't know whether that is

22  because there aren't any creditors (because the Center actually wasn't doing any hearing restoration

23  research in 2013 or the prior pledges totaling $3 million were more than sufficient to cover any

24  debts) or because Plaintiff wants to keep mum about the truth that HRI had improperly diverted

25  designated funds (as he alleges elsewhere). But, in truth, that doesn't matter. All that matters is

26  that Plaintiff's conclusory damage allegations lack the requisite plausibility to survive a motion to

27  dismiss. Just saying you had costs and claims isn't enough. *Iqbal*, 556 U.S. at 662 ("the tenet that

28

1    a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause

2    of action's elements, supported by mere conclusory statements").

3        51.    Accordingly, Plaintiff has not adequately pled the element of damages, which is

4    necessary to recover under California law.

5        52.    **Fifth**, the pledge agreement is an executory contract between Defendant and HRI

6    (not TIFKAH) because, on the very face of allegations in the Pledge Complaint, each gift at the

7    end of every December was designated for use for the Koch Center in performing its hearing

8    restoration research, which contract Plaintiff rejected because he did not timely move to assume it.

9    *See* 11 U.S.C. § 365(d)(1). The reason Plaintiff did not assume the agreement is the same reason

10   he did not attempt to argue in response to the first motion to dismiss that HRI was performing

11   hearing restoration research at the end of December 2013: Plaintiff knew HRI was incapable of

12   rendering performance long before and had, equally long ago, breached its pledge agreements,

13   improperly diverting designated donor funds for general purposes. *See In re Crummie*, 194 B.R.

14   230, 238 (Bankr. N.D. Cal. 1996) (stating that the "[a]ssumption of executory contracts imposes

15   burdens upon debtors to cure defaults promptly, assure future performance, and adhere to all

16   contract terms without adjustment").

17       //

18       //

19       //

20       //

21       //

22       //

23       //

24       //

25       //

26       //

27       //

28

1

## VII. CONCLUSION

2        53.     For the reasons set forth in the Motion and above, Plaintiff has failed to satisfy his

3 obligation to plead a plausible claim for breach of contract against Defendant under Rules 8 and

4 12(b)(6) of the Federal Rules of Civil Procedure, incorporated herein by Rule 7008 and 7012 of the

5 Federal Rules of Bankruptcy Procedure. The Amended Pledge Complaint should be dismissed as

6 against Defendant without leave to amend.

7

Dated: January 19, 2017                   Respectfully submitted,

8

9

10

ORRICK, HERRINGTON & SUTCLIFFE LLP

11

12                          By: _____

13                             Jonathan P. Guy, Esq.
                             Jeffery D. Hermann, Esq.

14

15                             Attorneys for David H. Koch

16

17

18

19

20

21

22

23

24

25

26

27

28