Philip D. Dracht (219044)
THE LAW OFFICE OF PHILIP DRACHT
15 W. Carrillo St.
Santa Barbara, CA 93202
pdracht@drachtlaw.com
Telephone: (805) 979-8802
Facsimile:  (805) 613-6607

Attorneys for Plaintiff John J. Menchaca, Chapter 7 Trustee

# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA
# LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>TIFKAH, formerly known as House Research Institute,<br><br>        Debtor.<br><br>JOHN J. MENCHACA, Chapter 7 Trustee,<br><br>        Plaintiff,<br><br>vs.<br><br>DAVID H. KOCH, an individual, RICK CARUSO, an individual, TINA CARUSO, an individual, STEPHEN CHANDLER, an individual SUE W. CHANDLER, an individual, the SCOTTSDALE FOUNDATION, an unknown entity,<br><br>        Defendants. | Case No. 2:14-bk-21532-RK<br><br>Chapter 7<br><br>Adv. No. 2:16-ap-01266-RK<br><br>**OPPOSITION TO MOTION TO DISMISS ADVERSARY PROCEEDING [DKT. NO. 63-66]**<br><br><u>Hearing</u><br>Date: February 21, 2017<br>Time: 3:30 p.m.<br>Courtroom: 1675 |

1

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................................3

INTRODUCTION ...................................................................................................................4

FACTS     5

ARGUMENT ...........................................................................................................................5

    A.    Breach of Contract ..................................................................................5

    B.    The Institute Performed Its End of the Agreement ................................5

    C.    2014 Bankruptcy Does Not Erase Koch's 2013 Obligation ...................7

    D.    Plaintiff Has Specifically Alleged Damages...........................................9

    E.    The Donor Pledges are not Executory Contracts....................................9

CONCLUSION ......................................................................................................................10

# TABLE OF AUTHORITIES

Cases

*Crisp Area Y.M.C.A. v. NationsBank, N.A.*, 526 S.E.2d 63, 66 (Ga. 2000) ................8

*Estate of Klinkner*, 85 Cal. App. 3d 942, 947, 151 Cal. Rptr. 20 (Ct. App. 1978) .....6

*In re Boston Regional Med. Ctr., Inc.*, 410 F.3d 100, 109 (1st Cir. 2005).................7

*In re Crossroad Health Ministry, Inc.,* 319 B.R. 778, 781-82 & n.2 (Bankr. D.D.C. 2005).........................................................................................................................7

*In re Estate of Lipsky*, 45 Misc. 2d 320, 321 (Sur. Ct. N.Y. Co. 1965) ......................5

*Montclair Nat'l Bank & Trust Co. v. Seton Hall College of Medicine and Dentistry*, 96 N.J.Super. 428, 233 A.2d 195 (Ct.App.Div.1967)......................7

*Oasis West Realty, LLC v. Goldman,* 51 Cal.4th 811, 821 (2011).............................5

*Old Colony Trust Co. v. Third Universalist Soc. of Cambridge*, 285 Mass. 146, 188 N.E. 711 (1934) ................................................................................................8

*Palms Clinic & Hospital, Inc. v. Arizona Soc. for Crippled Children & Adults, Inc. (In re Estate of Daley*), 6 Ariz.App. 443, 433 P.2d 296 (1967).................8

Other Authorities

Council Of California Civil Jury Instruction 303 .......................................................5

Plaintiff John J. Menchaca, the Chapter 7 trustee (the "Trustee") of the estate of TIFKAH, formerly known as House Research Institute (the "Institute" or "HRI"), opposes the motions to dismiss brought by David H. Koch ("Koch"), Rick and Tina Caruso (the "Carusos"), and the Scottsdale Foundation ("Scottsdale").

## INTRODUCTION

David Koch got what he asked for. He pledged $5,000,000 to the Institute in 2010, payable in five yearly $1,000,000 installments. In exchange, the Institute created the Koch Center for Hearing Restoration. But in 2013, Koch didn't honor his $1,000,000 promise. And on June 12, 2014, the Institute filed a voluntary petition for Chapter 7 bankruptcy.

Defending his failure to honor his promise, Koch's argument can be summed up this way: the Institute couldn't do the research that Koch was supposed to pay for, but didn't. That argument may have been a successful one for the pledges due after the filing of the petition for Chapter 7 bankruptcy. But for the pledges due pre-petition in 2013, Koch is engaging in a sleight-of-hand. This is because the $5,000,000 pledge payable in $1,000,000 installments was "conditional on the Center which will bear David Koch's name." FAC, Exhibit A, page 4 [Dkt. 50-1]. And there was no condition on how the Institute was to spend the money, other than the funds were designated for the Koch Center. *Id.*

Despite Koch's argument, the Institute was operational in 2013 and the Koch Center was conducting hearing restoration research. And the Institute did incur liabilities associated with that research in 2013. Thus, the Institute can allege that had Koch fulfilled his promise it could have used the money to support the Koch Center. To hold otherwise renders charitable pledges (particularly sizeable ones such as Koch's) illusory, so long as the failure to honor the pledge precedes the bankruptcy of the institution. Recognizing the need for charitable institutions to enforce pledge obligations, the "trend of judicial decision during the last century has been towards the enforcement of charitable pledges almost as a matter of public policy." *In re*

*Estate of Lipsky*, 45 Misc. 2d 320, 321 (Sur. Ct. N.Y. Co. 1965). Koch raises no issues why this Court should buck the trend and let him skirt his obligations here.

## FACTS

The House Research Institution was one of the country's top research facilities for hearing disorders. FAC ¶ 11 [Dkt. No. 50]. In December, 2010, Koch pledged to donate $5 million to the House Research Institute, at $1 million per year for five years. The pledge was "a 5 year commitment pledge totaling 5 million dollars, conditional on the creation of the Center which will bear David Koch's name," with the funds designated for use at the Koch Center FAC¶14, Exhibit A [Dkt. No. 50], 50-1]. The Institute created the Koch Center for Hearing Restoration in response to the pledge, which was in existence and thriving in 2013. FAC ¶¶ 12, 17 [Dkt. No. 50].

In a 2013 progress report to Koch on the Koch Center, the Institute reported to Koch that the Center was thriving. But when Koch's third $1,000,000 installment on his $5,000,000 pledge came due in 2013, Koch failed to make that installment payment. FAC ¶ 16 [Dkt. No. 50]. On June 12, 2014, the House Research Institute filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. FAC ¶ 3 [Dkt. No. 50].

## ARGUMENT

### A. Breach of Contract

To establish a cause of action for breach of contract, the House Research Institute must plead and prove (1) the existence of the contract, (2) the Institute's performance or excuse for nonperformance, (3) the Defendants' breach, and (4) resulting damages to the Institute. *Oasis West Realty, LLC v. Goldman,* 51 Cal.4th 811, 821 (2011); Council Of California Civil Jury Instruction 303.

### B. The Institute Performed Its End of the Agreement

As outlined by the letters transmitting the payment, Koch made a "5 year commitment pledge totaling 5 million dollars, conditional on the creation of the

1  Center which will bear David Koch's name." FAC, Exhibit A, page 4 [Dkt. 50-1].
2  The funds were designated simply to support the Koch Center. *Id.* As alleged by the
3  Institute, it created the Koch Center for Hearing Restoration. FAC ¶¶ 12, 17 [Dkt.
4  No. 50]. And as the Institute alleges, had Koch made his million-dollar payment in
5  2013, the Institute would have been able to use those funds to support the Koch
6  Center. FAC ¶18.
7         Yet Koch argues that the Institute has not alleged it was capable of performing
8  hearing restoration research at the end of 2013. This argument is directly contrary to
9  the 2013 progress report alleged in paragraph 17 of the First Amended Complaint.
10 Again, the Koch funds were not tied to any particular research but were instead
11 designated to support the Koch Center. And Plaintiff has specifically alleged the
12 Institute used Koch funds to support the Koch Center and that had Koch made its
13 required pledge payments in 2013, it would have been able to use those funds to
14 support the Koch Center. FAC ¶17.
15        Koch wants the Court to move beyond a Rule 12(b)(6) standard and to
16 consider various other documents in their voluminous Request for Judicial Notice to
17 argue that the Institute could not use the funds for their designated purpose. Plaintiff
18 does not dispute that the Institute's financial distress came to a head in 2013. But
19 Koch's failure to honor his pledge in 2013 was an effective decapitation of the
20 Institute and the Koch Center. If the Court wishes to consider the Koch's arguments
21 and treat their Rule 12(b)(6) motion as a Rule 56 motion pursuant to Rule 12(d),
22 Plaintiff requests leave to submit its own matters outside the pleadings regarding the
23 Institute's research at the Koch Center in 2013, and claims incurred because of the
24 Koch Center and Koch's failure to make his promised payment.
25        Koch cites the case of Estate of Klinkner, 85 Cal. App. 3d 942, 947, 151 Cal.
26 Rptr. 20 (Ct. App. 1978) and argues that because the Institute had financial difficulty
27 in 2013 it was like church that had been dissolved as a canonical entity but had
28 continued its corporate existence. Nothing of the sort had happened here. The

Institute was still operational in 2013, although struggling financially, as indicated by the variety of secured and unsecured claims listed in their schedules. Contrast the Institute with the church in *Klinkner*, which the court pointed out: "not only has appellant ceased functioning, but in addition to having been dissolved as a canonical entity, appellant has lost its authority to function as a church." *Id.* at 950.

Similarly, in *In re Boston Regional Med. Ctr., Inc.*, 410 F.3d 100, 109 (1st Cir. 2005), the debtor charity (a non-profit hospital) that had filed for Chapter 11 bankruptcy brought an adversary proceeding seeking a ruling that the residue of charitable testamentary trusts needed to be turned over to the hospital's estate even though the hospital ceased its operations and was liquidating. *Id.* at 104. The court ultimately ruled the charity was entitled to the funds because the debtor "was a fully functioning hospital at that time, it was eligible to receive the bequest. The fact that its continued existence as a hospital was short-lived did not alter that reality." *Id.* at 113. Here, although the Institute was suffering financially in December 2013, it was still functioning as a charitable institution – just not one that could sustain the death blow of Koch's broken promise.

**C. 2014 Bankruptcy Does Not Erase Koch's 2013 Obligation**

Requiring Koch to honor his pre-petition pledge is consistent with other courts' findings on similar facts involving pre-petition charitable gifts. There are two general ways courts treat these cases. The first way is that the courts may treat those donations as corporate assets available to creditors without holding fast to the restriction on funds. In *In re Crossroad Health Ministry, Inc.,* the bankruptcy court found that funds held by a non-profit corporation subject to charitable use limitations were corporate assets available to creditors upon dissolution or liquidation, notwithstanding the restriction placed upon such funds by the donor. *In re Crossroad Health Ministry, Inc., 319 B.R. 778, 781-82 & n.2 (Bankr. D.D.C. 2005)*; *see also Montclair Nat'l Bank & Trust Co. v. Seton Hall College of Medicine and Dentistry,* 96 N.J.Super. 428, 233 A.2d 195 (Ct.App.Div.1967) (college, operating

7

when testator died but subsequently closed, was entitled to use gift to pay its debts.); *Palms Clinic & Hospital, Inc. v. Arizona Soc. for Crippled Children & Adults, Inc. (In re Estate of Daley)*, 6 Ariz.App. 443, 433 P.2d 296 (1967) (clinic that was not operating, but retained its corporate existence could receive legacy.); *Old Colony Trust Co. v. Third Universalist Soc. of Cambridge*, 285 Mass. 146, 188 N.E. 711 (1934) (religious corporation which had sold all property and ceased holding services, but did not dissolve, was entitled to receive legacy.). The second way Courts treat these donations is to require the debtor to apply the funds subject to the restriction. For example, in *In re Winsted Memorial Hospital*, the bankruptcy court found that gift pledges to hospital were enforceable even though the charitable organization, was in bankruptcy and had ceased operations. There the trustee agreed to apply charitable gifts only to debts incurred in the course of providing hospital services. *In re Winsted Memorial Hospital*, 249 B.R. 588, 594 (Bankr. D. Conn. 2000) *see also Crisp Area Y.M.C.A. v. NationsBank, N.A.*, 526 S.E.2d 63, 66 (Ga. 2000) ("The accepted rule in other jurisdictions is that a bequest to a charitable corporation is given effect if the named entity is still in existence when the time for vesting arrives, even though the corporation meanwhile has become has become entirely inactive. It may take the legacy but must devote it to some proper corporate purpose."). The same principal could apply here – to the extent the Institute has debts associated with supporting the Koch Center, the Court can require Koch to honor his pledge to pay those debts.

California's law is consistent with both approaches. California Business and Professions Code §17510.8 requires that the charity use charitable funds for "the declared charitable purpose for which they are sought," Plaintiff's First Amended Complaint alleges both that the Institute used Koch's donations to support the Koch Center and that had Koch made his 2013 payment the Institute could have used those funds to support the Koch Center. FAC ¶¶ 12, 17, 18 [Dkt. No. 50]. Regardless of this Court's choice of how to apply the funds – a choice that can be made at trial and

a
b

not on a motion to dismiss, Plaintiff has satisfied his pleading obligation by alleging that the Institute was operational and could have used Koch's pledge in 2013. There is nothing in the First Amended Complaint nor in the voluminous Request for Judicial Notice that indicates the Institute was not operational such that it could not use the $1,000,000 pledge due in 2013 to support the Koch Center.

### D. Plaintiff Has Specifically Alleged Damages

On December 31, 2013 Koch owed the Institute $1,000,000 under his pledge agreement. He did not make that payment. On this breach of contract, Koch owes at most $1,000,000 in damages. Koch tries to argue that Plaintiff has not specifically pled the element of damage because he is supposed to specifically identify debts associated with the Koch Center. Koch wants to hold Plaintiff's First Amended Complaint to a heightened pleading standard where Plaintiff is required to allege "a specific cost or a specific claim allegedly related to the Koch Center." This is *Iqbal* taken to an absurdity.

In making this argument, Koch overstates his facts. He claims that "the pledge payments were to fund hearing restoration research." Motion, 19:11-12. But this restriction on the use of funds in the pledge does not exist. Again, the only condition for the Institute to receive the fund was to create the Koch Center for Hearing Restoration. And the funds were simply designated for Koch Center, with no further restrictions regarding their use.

Koch cites to no California or federal case requiring a Plaintiff to specifically itemize damages that result from a breach of contract claim. To the extent the Court requires Plaintiff to identify expenses associated with the Koch Center incurred in 2013 and beyond and only recover those expenses, that that is not a pleading requirement but a proof requirement at trial. And if it is required, Plaintiff should be granted leave to make that showing.

### E. The Donor Pledges are not Executory Contracts

The $1,000,000 December 2013 pledge payment owed on Koch's $5,000,000

9

pledge is not an executory contract because the Institute's interest in it vested on the date the payment was due – December 31, 2013. As alleged in the First Amended Complaint, the Institute fulfilled the condition of payment – creation of the Koch Institute, and had they been paid, could have used Koch's donation to support the Koch Institute. Contracts in which one party has no post-petition obligation or no obligation other than the payment of money are not executory. See *In re Munple, Ltd.*, 868 F.2d 1129 (9th Cir. 1989).

## CONCLUSION

Plaintiff should be permitted to maintain its action against Koch for his failure to honor his promised donation. If the Court grants Koch's Motion, Plaintiff requests leave of Court to amend his Complaint to address any perceived factual deficiencies.

Dated: February 7, 2017     THE LAW OFFICE OF PHILIP DRACHT

*/s/ Philip D. Dracht*
Philip D. Dracht
Attorneys for Plaintiff John J. Menchaca,
Chapter 7 Trustee

**PROOF OF SERVICE OF DOCUMENT**

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

15 W. Carrillo St., Santa Barbara, CA 93101

A true and correct copy of the foregoing document entitled: **OPPOSITION TO MOTION TO DISMISS** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document.  On (*date*) February 7, 2017, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

**Robert J Becher**         robertbecher@quinnemanuel.com
**Jonathan Guy**           jguy@orrick.com
**Jeffery D Hermann**      jhermann@orrick.com
**Eric D Winston**         ericwinston@quinnemanuel.com

☒  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) February 7, 2017, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows.  Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method  for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) February 7, 2017, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| February 7, 2017 | Philip D. Dracht | /s/Philip D. Dracht |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |